## THOMPSON *v.* ALLEN COUNTY and others.[*]

### (*Circuit Court, D. Kentucky.* July 28, 1882.)

1. TAXES—COLLECTION BELONGS TO THE STATE—UNITED STATES COURTS CANNOT COLLECT THROUGH A RECEIVER.

   The *collection* of a public tax as much belongs to the authority of the state as its levy and assessment. The tax, when assessed, although levied for a specific purpose, is not a fund which can be dealt with by a court as an equitable asset or chose in action subject to an implied trust, and United States courts have no power to appoint a receiver to collect such taxes even where there is no state officer to perform that duty; per MATTHEWS, Justice; BAXTER, C. J., dissenting.

2. SAME—CASE STATED.

   Complainant holds an unsatisfied judgment against the defendant Allen county. A special tax to pay his judgment was levied in pursuance of a *mandamus.* The statute authorizing the tax provided that it should be collected by a collector appointed for that purpose by the county court. In answer to a *mandamus* requiring the appointment of such collector, it appeared that no suitable person could be found who was willing to accept the appointment. Upon bill in equity filed in the United States circuit court to obtain relief by the collection of these taxes and their application to the payment of the complainant's judgment through a receiver or other agency of the court, *held,* by MATTHEWS, Justice, that the court had no jurisdiction to grant the relief prayed for. BAXTER, C. J., dissented.

In Equity.

The facts were as follows:

In 1869 the Kentucky legislature chartered the Cumberland & Ohio Railroad Company. Its proposed line of road passed through Allen county, defendant in this suit. The charter authorized any county through which such proposed road should pass to subscribe for stock in said company, and to issue and sell its bonds to pay for such stock. The county subscribed for a large amount of stock, and in payment issued its bonds to the company, which sold them. The charter of the company provided that the county court of any county issuing bonds was "authorized and required to levy annually, and collect, a tax upon the taxable property in their county, as listed and taxed under the revenue laws of this state—a sum sufficient to pay the interest on said bonds as it accrues, together with the costs of collecting the same;" and also to levy and collect a tax to pay the principal of the bonds. It was further provided that "the county court * * * may appoint collectors for said tax, or may require the sheriffs of the respective counties within the jurisdiction of the same to collect said tax; all of whom shall have the same powers and remedies, and shall proceed in the same way, for the collection of said tax as the sheriffs in the collection of the state revenue." It also provides for the time when the sheriff shall pay over the taxes so collected, and his rate of com-

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

missions thereon.  1 Acts 1869, pp. 471, 472.  See, also, amendment to said charter, 2 Acts 1869–70, p. 226.

In 1876 the Kentucky legislature passed an act by which it was provided " that hereafter the sheriff of Allen county shall not be required to give bond for the collection of any levy or tax in said county for the purpose of paying the principal or interest on the county bonds of said county issued for railroad purposes, and shall not be held responsible in his official bond for the same; that the county court shall, at the instance or motion of any person, or by request, appoint a special collector to collect all taxes or levies in said county for railroad purposes, and shall require bonds, with security, to be approved by the court, for the faithful discharge of all duties incumbent on him."  1 Acts 1876, p. 307.

The complainant, T. W. Thompson, as the holder of a large number of said bonds, sued the county in this court on a number of the interest coupons on said bonds, and in 1878 and 1879 recovered judgments against it in the amount of $22,188.03 and costs.  An execution issued therefor, which was returned " no property found."

Thompson then sued out, in this court, a *mandamus* against the county court of Allen county, and thereby compelled said county court (composed of the county judge and the justices of the peace of that county) to levy a tax of $2.08 on each hundred dollars' worth of property in the county to pay said debt of Thompson.  He also sued out a *mandamus* to compel said county court to select a " collector " of taxes, in accordance with said statute of 1876; and the county court, in obedience thereto, undertook to select a collector, but was unable to find any one who would accept the office, as appears by the following stipulated facts:

"*First.* That the county court of Allen county has in good faith and diligently endeavored to find a fit and proper person to act as collector of the railroad taxes in said county, and of the special levies of taxes in the bill of complaint set forth.  *Second.* That no such fit and proper person can be found who will undertake and perform the office and duty of such collector.  *Third.* That the complainant is without remedy for the collection of its debt herein, except through the aid of this court in the appointment of a receiver, as prayed for in the bill, or other appropriate orders of the court."

Under these circumstances the complainant, Thompson, filed his bill in equity in this court, and, after setting out the above facts, made certain named tax-payers of the county defendants, and gave the amounts assessed against them respectively, and alleged that by virtue of said levy of taxes the said tax-payers " became and they are indebted to the defendant Allen county in the sums set opposite their respective names, which indebtedness, together with that of all the other tax-payers of said county under the said levy, is a trust fund for the use and benefit of your orator's said judgments."  The bill then prays that the said tax-payers " be required and compelled to pay into this court, or to some person to be appointed by this court as its receiver, the several sums due by them to the said Allen county, on account of and by reason of said special levy and tax of May 28, 1881, as aforesaid, and that the same be applied to the payment of your orator's judgments, interest, and costs, including the costs of collecting said tax."

*W. O. & J. L. Dodd,* for complainant.

*Brown & Davie,* for respondents.

Before MATTHEWS, Justice, and BAXTER, C. J.

MATTHEWS, Justice. The complainant has an unsatisfied judgment rendered in the court against this defendant upon coupons representing interest upon bonds issued by the county in aid of a projected railroad. A special tax to pay this judgment has been levied in pursuance of a *mandamus.* The statute authorizing the tax provides that it shall be collected by a collector appointed for that purpose by the county court. In answer to a *mandamus* requiring the appointment of such a collector, it is returned that no suitable person can be found who is willing to accept the appointment, and it is admitted that the county court has in good faith diligently endeavored to find one, and that no one can be found who is willing to qualify as such collector. The present bill is filed to obtain relief by the collection of these taxes, and their application to the payment of the complainant's judgment, through a receiver or other agency of the court.

The ground of this resort to equitable relief is that the remedy provided by law is inadequate and has failed, and that the levy and assessment of the taxes have created a fund which constitutes a trust to be administered by a court of equity.

The precise question thus presented was left undecided by the supreme court in the case of *Meriwether* v. *Garrett,* 102 U. S. 472. In the conclusions of the court, as announced by the chief justice, it is said:

"Whether taxes levied in obedience to contract obligations or under judicial direction can be collected through a receiver appointed by a court of chancery, if there be no public officer charged with authority from the legislature to perform that duty, is not decided, as the case does not require it."

It may, perhaps, be equally true that the case has not, in fact, arisen here, for although it is to be assumed that no collector has been or can be appointed, yet the reason is not that there is no such officer provided by law, but because no person is willing to accept an appointment and perform its duties. The failure of the remedy is therefore merely casual, and not necessary; and in contemplation of law there is an officer charged with the duty which a court of equity is asked to assume because there is no such officer.

But, if the question was left open by the decision referred to, I am constrained to conclude that it is decided by the spirit and logic of that case. The collection of a public tax as much belongs to the authority of the state as its levy and assessment, and the reasons

which forbid a court to supply the latter, apply with equal force to the former. The tax, when assessed, is not a fund which can be dealt with by a court as an equitable asset or a chose in action subject to an implied trust. The levy and assessment is a step in a process of which the collection is another, and that proceeding is the only agency known to the law by which the desired result can be affected. The jurisdiction of this court is confined to compelling the state officers to perform their duty under the state laws, and no substitute can be invented.

The bill, consequently, must be dismissed.

BAXTER, C. J., dissents; and a division is certified to the supreme court of the United States.

NOTE. For Judge Baxter's views upon this question see *Garrett* v. *Memphis*, 5 FED. REP. 860, delivered upon entering the mandate of the supreme court in the case of *Meriwether* v. *Garrett*, 102 U. S. 472.—[REP.