HENDRY, Judge.
The appellants brought suit in the Circuit Court contesting the legality of the 1966 assessed valuation of a shopping cen *630 ter. Prior to that suit, they had sought reduction of the assessment by filing eighty-one separate petitions before the Dade County Commission sitting as the Board of Equalization. At the conclusion of the hearing before it, the Board of Equalization granted the request of the tax assessor, who testified that he desired to review and revise all the assessments, including the eighty-one particular assessments contested in the petitions, placed on the appellants’ properties in accordance with an overall formula involving his use of the “income approach”.
Thereafter, the assessor and his office attempted to recast only the land valuations pertinent to the controversy, ultimately obtaining a figure of $.95 per square foot as the assessed value of the lands in the shopping center. Whereas the original assessment was $1.90 to $2.00 per square foot, the reduction of the land assessment equaled approximately 48%. Nevertheless, the appellants felt that the revised assessment was still not accurate, and thereupon, proceeded with their legal remedy, pursuant to § 196.01, Fla.Stat., F.S.A. (1967), and Article V Section 6(3) Florida Constitution. At the conclusion of the hearings before it, the court rendered its opinion and final judgment, finding as follows:
(1) that the appellants were denied their right to a review of the assessment of their property by the equalization procedures provided by law;
(2) that the appellants were thus entitled to a review of the assessment by the circuit court;
(3) that the appellants had failed to prove to what extent the assessment was excessive (with the exception of certain small details);
(4) that the taxing authorities failed to satisfactorily prove to the court that their assessment valuation had been reached in accordance with the law except for the presumption, if any, of the validity of their assessment in the absence of contrary proof by the plaintiffs;
(5)that the circuit court was powerless to itself assess the property. Based on the above findings, the court thereafter ordered the taxing authorities to reassess the plaintiff’s property, returning any amounts which had been overpaid by the appellants prior to the assessment.
In reviewing the opinion rendered by the circuit judge, we must acknowledge its scholarly thoroughness and appraisal of the intricacy of the procedure used by the tax assessor’s office. While considering the means and methods proscribed for ascertaining the value of the property for taxation purposes, the court also combined into its opinion its consideration of the pleadings and evidence before it relevant to the proper determination of the value of the property. However, the appellant’s point on appeal contends that the trial judge erred when he declined to give any legal effect to the appraisal evidence that was submitted to him, and instead, remanded the entire cause back to the tax assessor’s office for a re-assessment.
Our attention is first directed to the case of Overstreet v. Chatios, Fla.App.1961, 135 So.2d 870. The decision of this court in Chatios held that the chancellor had overstepped the power of his office when he reassessed that portion of the contested property upon which he had determined that an invalid assessment had been made. The conflict in Chatios arose because of the tax assessor’s assessment as to land and improvements thereon. Once the chancellor had determined that the original 1959 tax assessment was too high as to the improvements, he thereupon applied the 1959 millage rate to the 1958 valuation, such prior valuation having been determined to have been correct. In addition, he also made adjustments in the contested assessment due to a miscalculation as to the cubic areas of the two hotel properties being assessed. We reversed, holding as follows:
“ * * * Obviously a portion of the assessment was legal and valid and like *631 wise a portion was invalid by reason of miscalculation and oversight. Nevertheless, the chancellor was without authority to proceed to reassess that portion of the property upon which it had been found that an invalid assessment had been made, and thereafter to compute the tax. The chancellor did not merely strike down a portion of an illegal tax as was done in Blume v. McMullen, 154 Fla. 494, 18 So.2d 31, but went further and revalued and reassessed the property. In effect, the chancellor’s decree represents a valuation and assessment by-the court rather than that of the administrative officer charged with such duty.”
In subsequent cases before this court, we have distinguished situations wherein the chancellor could properly make a dollar amount determination as to property, the value of which, for assessment purposes, was being contested. In Dade County v. Deauville Operating Corp., Fla.App.1962, 156 So.2d 31, the final decree which was then being appealed held as follows: (a) that the 1961 tax roll, containing the contested assessment, was valid; (b) that the assessment of plaintiff’s property was excessive and hence illegal; (c) that the full cash depreciated value of the six hotel properties at issue was thereby to be reduced by approximate fifty-five per cent. As to the finding (c), supra, the chancellor designated specific dollar amounts for each of the six hotel properties at issue. In the ensuing appeal, the issue at bar was: Whether “ * * * the trial court could not properly reassess improved real property for tax purposes where it found the tax assessor’s assessment to be excessive.” Id. at 32. In holding that the trial court did act properly, this court reasoned as follows:
“The appellant refers us to our own case of Overstreet v. Chatlos, Fla.App.1961, 135 So.2d 870. We think the cited case recognizes that while the courts of this state cannot assess or levy taxes, they can under § 196.01, Fla.Stat., F.S. A., strike down the illegal portion of a tax and leave the remainder intact.
“In the Chatios opinion it was pointed out that the chancellor found that the assessor had properly assessed the land and personalty but used an improper and incorrect method in valuing the improvements to the land. The entire valuation made on that part of the taxpayer’s property consisting of improvements to the land was invalid. Therefore the court was without jurisdiction to make a new assessment for that portion of the property. Cf. West Virginia Hotel Corp. v. W. C. Foster Co., 101 Fla. 1147, 132 So. 842.
“In the instant case the court found the assessment valid but struck down a portion that was found to be illegal. As previously pointed out no attack is made upon his power to strike down the illegal portion. The court left standing the legal portion of the assessment. We think this action is in accordance with the holdings of the Supreme Court in Folsom v. Bank of Greenwood, 97 Fla. 426, 120 So. 317; Harvey Bldg. Corp. v. Hannon, 140 Fla. 399, 191 So. 784; Burnett v. Neclar, Inc., 142 Fla. 145, 194 So. 324; Frazier v. Adams, 150 Fla. 168, 7 So.2d 122.”
A similar situation arose in the case of Haines v. Leonard F. Farber Company, Fla.App.1967, 199 So.2d 311. There, the chancellor found the land value of the assessed property to be excessive and reduced the total assessment by a stated amount deemed to be excessive. As its final point on appeal, the taxing authorities of Pinellas County “question[ed] the right of the Chancellor to strike down a portion of the assessment rather than remanding the matter to the Tax Assessor for reassessment.” Id. at 314. The District Court of Appeal therein answered that point on appeal in these words:
“Although the Courts of this State cannot assess or levy taxes, they can *632 strike down an illegal portion of a tax and leave the remainder intact under the provisions of Section 196.01, Florida Statutes, F.S.A. See Dade County v. Deauville Operating Corp., Fla.App., 156 So.2d 31.”
Finally, in our examination of the case of Frazier v. Adams, 1942, 150 Fla. 168, 7 So.2d 122, we note that the Supreme Court dealt with a similar question when the trial court determined that the tax assessor’s assessment of $175,000.00 as to the subject property was too high, and, after hearing evidence and testimony, ultimately set the assessment at $100,000.00. The Supreme Court affirmed this action by the chancellor in these words:
“The Chancellor below heard the testimony and reached the conclusion that 75% of the actual cash value of plaintiff’s property as of January 1st for the years of 1939 and 1940 was the sum of $100,000 for each of said years. The record abounds with testimony to sustain the conclusions of the Chancellor.” Ibid.
A dissent was filed in the Frazier case, supra, but is not pertinent to the issue here.
Returning to the facts at bar, we note that the chancellor made his determination that the taxing authorities failed to satisfactorily prove that their assessment valuation had been reached in accordance with the law. Having made such a determination that the entire assessment as to land valuation was illegal, the chancellor had thereby satisfied the prerequisites necessary for his further determination to strike down that portion of the assessment held to be excessive. Frazier v. Adams, supra; Haines v. Leonard L. Farber Company, supra; Dade County v. Deauville Operating Corporation, supra. The.result achieved thereby would have been harmonious with the above decisions and also with our decision in Chatios, supra, whereby the trial court is not only empowered, but also ordered to adjudge which portion of the assessment was invalid and which portion valid, rather than to reassess the subj ect property.
Although the practical effect of the result from the above action may be called an assessment by the trial judge, in legal theory this is not a true denomination of his work as much as the sole issue before him is the extent of the validity of the assessment. If this is a legal fiction, it may be a worthwhile one in that it serves to remind judicial officers that their duty is limited and should be exercised with caution. However, we are cognizant of the main distinction existing between the facts at bar and those of cited decisions, supra, viz: that the appellant herein contends that the court erred in not affirmatively striking down those excessive portions of the assessment and subsequently determining the remaining dollar amount as the proper value for assessment purposes.
In arguing that the trial court should not be called upon to affirmatively exercise its powers in compliance with the principles of the above cases, the taxing authorities contend that, in reality, such procedure would usurp their • official administrative function. However, we do not agree with this position and cite the following factors which favor the policy of our decision herein: (a) over three years have elapsed since the 1966 assessment was levied. During that time, the composition of the Board of Equalization has changed from that of 1966; (b) in addition, none of the personnel of the tax assessor's office who were originally connected with the case are still employed there; (c) evidence and expert testimony were presented by both sides to the trial judge, and specific amounts as to the valuation in question were offered and supported by both sides.
In view of the initially announced principles extracted from the Chatios, Deauville Operating Corporation, Leonard I. Farber Company, and Frazier cases, supra, and also the factors peculiar to this case because of the lapse of time since the *633 original assessment in 1966, we are of the opinion that the trial court erred in declining to affirmatively determine what portion of the contested assessment was excessive.[1]
Thus, the final judgment being appealed is hereby remanded with directions for the chancellor to determine which portion of the assessment was illegal, and leave the remainder intact as the correct assessment for the subject property.
Remanded with directions.

. In the case of Georgia-Pacific Corporation v. State Tax Commission, 1964, 237 Or. 143, 390 P.2d 337, the court was faced with a nearly identical issue to that of the case at bar. Therein, the court stated:
“The trial court held that further proceedings should be had at the administrative level in order to permit the commission to enter a proper assessment. This result was a permissible one. [Citations omitted.] We do not believe, however, that such additional delay is necessary in this case. As will be seen, the record does permit the trial court to dispose of this case.
“Each side contends that its evidence proves its theory of the case to be the ' correct one. Neither side wants the matter sent back to the commission for more evidence. After examining the substantial volume of evidence now in the record, we can understand the desirability of putting a halt to the taking of more evidence. It is unlikely that either side would enhance its case by more evidence. Since the matters in issue are so largely matters of opinion, it is doubted that the marshaling of still more opinions would shed light on the issue. The judge who tried the case is in as good a position as is the tax commission to put a market value on the property, and he is not a party to the litigation. The court should dispose of the matter.
“The court may request counsel to submit any supplemental briefs and arguments that might be desirable in connection with the fact-finding that yet remains to be accomplished. The work still before the trial court is essentially that which would be presented to a jury in a condemnation case. The evidence of the experts is in the record. Counsel have addressed themselves to argument upon its meaning. If there remain questions to be asked of counsel, the trial court should ask them. Ultimately, the court must decide where, between the taxpayer’s proposed value and the value given the property by the assessor, the fair market value thereof lies.”